UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ X
LLE ONE, LLC, *et al.*,

        Plaintiffs,

  -against-

FACEBOOK, INC.,

        Defendants.

------------------------------------ X

Case No: 18-Misc-0503

(Related to Civil Action 4:16-cv-06232, N.D. Cal.)

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE**

Plaintiffs in the matter of *LLE ONE, LLC, et al. v. Facebook, Inc.*, 4:16-cv-06232 (N.D. Cal.) ("Plaintiffs") move for an order to enforce subpoenas served on non-parties (1) Helen Lin (Publicis Media's Chief Digital Officer); (2) Publicis Media, Inc.; (3) Starcom MediaVest Group, Inc., (4) Zenith Media Services, Inc., (5) MediaVest Worldwide, Inc., and (6) Digitas, Inc. (collectively, "Publicis")  The subpoenas were valid and properly served on August 27 and August 28, 2018 and with a return date of September 16, 2018.  Plaintiffs granted Publicis four extensions of time to respond and offered to narrow the scope of their request to facilitate an initial production of documents. Nevertheless, Publicis essentially ignored the subpoenas: as of this filing, **Publicis has failed to respond or object**.  And, as explained below, Publicis' counsel has blatantly misrepresented the facts in an effort to justify Publicis' refusal to comply with the subpoenas.  For these reasons, Plaintiffs seek an order from this Court deeming Publicis' objections waived and requiring Publicis to respond to the subpoenas.

The Underlying Action

The underlying action, *LLE ONE, LLC, et al. v. Facebook, Inc.*, 4:16-cv-06232 (N.D. Cal.), was initiated on October 27, 2016 in the Northern District of California.  Plaintiffs seek to represent a class of other online advertisers who purchased video advertisement services from Defendant Facebook, Inc. ("Facebook") between May 4, 2014, and September 23, 2016.  *See Barnett* Fourth Am. Compl., attached to the Declaration of Geoffrey Graber as Exhibit I, ¶ 84. Plaintiffs' allegations center on two inflated advertising metrics -- "Average Duration of Video Viewed" and "Average Percentage of Video Viewed" – that were provided by Facebook to video advertising purchasers. *Id.* at ¶¶ 27- 35. These two metrics provided advertisers with calculations of the average amount of time that a given Facebook user spent watching the advertiser's video,

and the average amount of the video that a given Facebook user watched. *Id.* Advertisers relied on these metrics to monitor and evaluate their video advertisements' performance. *Id.* at ¶¶ 37-38, 74, 81.

In September 2016, the *Wall Street Journal* revealed that Facebook had been overstating its "Average Duration of Video Viewed" and "Average Percentage of Video Viewed" metrics. *Id.* at ¶ 1. Specifically, instead of calculating averages by dividing the total amount of video watched by the total number of individual viewers, Facebook only divided the total amount of video watched by *some* of the individual viewers. *See, e.g., id.* at 8, Fig. 2. This error artificially decreased the denominator in its average calculations, thereby artificially *increasing* the total average calculation. *Id.* at ¶¶ 34-36. In other words, Facebook represented to its video advertising customers that their advertisements were being watched longer than those ads really were. *Id.* Plaintiffs have asserted claims under California's Unfair Competition Law, for breach of the duty to perform with reasonable care, and for common law fraud. *Id.* at pp. 20-22, 22-24, 24-25. Plaintiffs seek damages, restitution and injunctive relief. *Id.* at p. 25.

Discovery commenced on October 27, 2017, and is still ongoing. Declaration of Geoffrey Graber ("Graber Decl.") ¶ 2.

<u>The Role of Publicis</u>

The subpoenaed Publicis entities are large advertising agencies that purchase advertisements (including Facebook video advertisements) on behalf of companies. ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ Graber Decl. ¶ 6. When the *Wall Street Journal* disclosed Facebook's video-metric inflation on September 22, 2016, the article

cited to a letter written by Publicis Media.[1] In that letter, Publicis Media wrote that "[t]wo years of reporting inflated performance numbers is unacceptable."[2] Publicis Media wrote that Facebook's new metrics (which were rolled out in September 2016) were actually being introduced to obfuscate that Facebook's "Average Duration of Video Viewed" and "Average Percentage of Video Viewed" metrics had been inflated.[3] Publicis also wrote that the inflated metrics "once again illuminates the absolute need to have 3rd party tagging and verification on Facebook's platform."[4]

Facebook has produced documents during discovery further evidencing that ████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████, attached to the Declaration of Geoffrey Graber as Exhibit F. ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████, attached to the Declaration of Geoffrey Graber as Exhibit G. ████████████████████████████████████████████

---

[1] Suzanne Vranica and Jack Marshall, Facebook Overestimated Key Video Metric for Two Years, Wall Street Journal (Sept. 22, 2016, 7:29 PM), http://www.wsj.com/articles/facebook-overestimated-key-video-metric-for-two-years-1474586951

[2] *Id.*

[3] *Id.*

[4] *Id.*

█████████████████████████████████████████

█████████████████████████████████████████, attached to

the Declaration of Geoffrey Graber as Exhibit H.

    Plaintiffs' Months-Long Effort to Obtain Information from Publicis

On May 22, 2018, Plaintiffs first sought information from Publicis through a Rule 45 subpoena on Publicis Communications, Inc. *See* Proof of Service, attached to the Declaration of Geoffrey Graber as Exhibit A. Specifically, Plaintiffs served a subpoena on Publicis seeking information related to Facebook's video metric error, including any remuneration to Publicis or its clients in connection with the error.

Publicis refused to respond, and instead asserted that Plaintiffs had served the wrong Publicis subsidiary, and that Publicis Communications, Inc. did not possess any responsive documents. *See* June 8, 2018 Letter from S. Lewis, attached to the Declaration of Geoffrey Graber as Exhibit B. Plaintiffs asked Publicis to identify the correct entities. Publicis refused. Graber Decl. ¶ 4.

After months of additional discovery from Facebook, Plaintiffs were able to ascertain the specific individual who had interacted with Facebook concerning reimbursements in connection with the video metric error, and the Publicis entities that had contracted with Facebook to place video advertisements. Accordingly, on August 16, 2018, Plaintiffs issued a set of six subpoenas to the following: (1) Helen Lin (Publicis Media's Chief Digital Office); (2) Publicis Media, Inc.; (3) Starcom MediaVest Group, Inc., (4) Zenith Media Services, Inc., (5) MediaVest Worldwide, Inc., and (6) Digitas, Inc. Graber Decl. ¶ 5. Plaintiffs served the five Publicis subsidiaries at Publicis' offices in Manhattan on August 27, 2018. *Id.* at ¶ 7. Plaintiffs also attempted to serve Ms. Lin at her Publicis office, but Publicis initially refused to accept the subpoena on her behalf.

*Id.* On August 28, 2018, counsel for Helen Lin agreed to accept service for Ms. Lin. Plaintiffs then served Helen Lin's subpoena on August 28. *Id.* at ¶ 8. In each of the subpoenas, Plaintiffs requested production of the same six categories of documents. *Id.* at ¶ 9, Ex. C. The subpoenas also called for the depositions of Ms. Lin and corporate representatives from the subpoenaed entities at Plaintiffs' counsel's Manhattan offices. The subpoenas each had a return date of September 16, 2018, and requested deposition dates in October. *Id.* at ¶ 10.

Plaintiffs granted Publicis an extension of time to respond to the subpoenas to September 26, 2018, but Publicis failed to provide any written responses to the subpoenas. *Id.* at ¶ 11. Plaintiffs then granted Publicis another extension to September 28, 2018. *Id.* Publicis again ignored the deadline. *Id.* On October 4, 2018, Plaintiffs extended the deadline once again until October 9, 2018. *Id.* Once again, Publicis ignored that deadline. *Id.*

On October 15, 2018, Plaintiffs' counsel and counsel for Publicis had a lengthy meet and confer call concerning the subpoenas. *Id.* at ¶ 12. On that call, Publicis' counsel stated that Publicis would not produce Ms. Lin, or any of the corporate representatives, for deposition. Publicis counsel's explanation for Publicis' refusal to produce individuals for deposition runs in complete contradiction to Publicis' public comments and the documents uncovered in the course of this litigation. Publicis' counsel asserted that the Facebook video metrics in question "actually did not matter" to Publicis or Ms. Lin, and that Publicis' clients "really didn't care about the metric." Publicis counsel further asserted that after Facebook announced the error, Publicis and Ms. Lin simply "moved on." *Id.* With regard to the document requests, Publicis counsel agreed that Publicis would provide written responses and objections to the subpoenas by October 26, 2018. *Id.* On the call, Plaintiffs also agreed to limit the scope of their document requests for the time being. *Id.* at Ex. E (Graber Ltr. to Publicis Counsel, Oct. 16, 2018).

On October 26, 2018, Publicis **again** failed to serve its responses and objections. *Id.* at ¶ 13. Plaintiffs have, therefore, been forced to bring this motion pursuant to Federal Rules of Civil Procedure 37 and 45.

I. **LEGAL STANDARD**

Rule 34 of the Federal Rules of Civil Procedure authorizes parties in civil actions to request from non-parties, by Rule 45 subpoena, "documents and tangible things" within the scope of discovery permitted by Rule 26(b). Federal Rule of Civil Procedure 45, in turn, provides the mechanism by which non-parties can be subpoenaed to produce documents relevant to a pending matter.

If a non-party fails to produce documents in compliance with a subpoena, the United States District Court for the district where compliance is required may enter an order compelling the non-party to produce the subpoenaed documents. *See Tucker v. Am. Int'l Grp., Inc.*, 281 F.R.D. 85, 99 (D. Conn. 2012) ("The Court recognizes that it has inherent authority to compel inspection of non-party Marsh's electronic records under Rules 45, 34, and 37 of the Federal Rules of Civil Procedure."). In addition to ordering non-parties to produce documents, the Court may also find that non-party witnesses who fail to serve written objections to a subpoena within the time specified by Rule 45(c)(2)(B) waive their objections. *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996).

II. **ANALYSIS**

The issue before the Court is straightforward: Publicis has repeatedly ignored valid and properly served subpoenas seeking information that is reasonable and within the scope of discovery. In addition, Publicis' counsel has blatantly misrepresented the facts to justify its refusal to produce witnesses for deposition. In light of these facts, the court should deem Publicis' objections waived and order Publicis to respond to the subpoenas.

7

### A. The Subpoenas Are Valid and Properly Served

Pursuant to Federal Rule of Civil Procedure 45(a)(2), the subpoenas in this case were issued from the United States District Court for the Northern District of California, where this action is pending. They were signed by counsel for Plaintiffs, who is authorized to practice in the Northern District of California *pro hac vice*, in accordance with Rule 45(a)(3). Further, the subpoenas require compliance at Plaintiffs' counsel's New York offices, in satisfaction of the requirement that the subpoenas command attendance at a deposition or production of documents at a place "within 100 miles" of the place where the subpoena recipient "regularly transacts business in person." Fed. R. Civ. P. 45(c). There does not appear to be any dispute that the subpoenas are valid, or that they were properly served. The subpoena is therefore valid, and Plaintiffs submit that the Court should order the Publicis entities to respond.

### B. Plaintiffs Seek Production of Publicis Documents and Testimony that is Reasonable and Within the Scope of Discovery

Rule 26(b) provides that a party may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b). "[T]he scope of discovery under Fed. R. Civ. P. 26(b) is very broad, encompass[ing] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Pecoraro v. Marrero*, 281 F.R.D. 122, 127 (S.D.N.Y. 2012) (alterations in original).

Here, Plaintiffs seek documents that are clearly relevant to their claims. In their complaint, Plaintiffs allege that video advertisers who purchased advertising services from Facebook were harmed by Facebook's provision of inflated metrics. *See, e.g.,* Fourth Am. Compl. ¶ 98. Plaintiffs claim that, if they had known that the "Average Duration of Video Viewed" and "Average Percentage of Video Viewed" metrics were inflated, they would have purchased less advertising services and would have paid less for the services they bought. Fourth

Am. Compl. ¶ 101. ██████████████████████████████████

██████████████████████████████████████████████████

███████ ██████████████████████████████████████

██████████████████████████████████████████████

Publicis and Helen Lin will thus likely possess unique documents regarding the importance that video advertisers placed on the inflated video advertising metrics.

Publicis and Helen Lin will also possess documents relevant to Plaintiffs' claim for injunctive relief, which asks the Court to require Facebook to engage third-party auditors to conduct audits and evaluations of Facebook's advertising metrics on a periodic basis and ordering them to promptly correct any problems or issues detected by these auditors *See* Fourth Amended Complaint, at page 26. ██████████████████████

██████████████████████████████████████████████

████████████████████████████████ attached to the Declaration of Geoffrey Graber as Exhibit G.

████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████ attached to the Declaration of Geoffrey Graber as Exhibit H.

Information relating to Publicis' discovery of the error, communications with its clients, remuneration, and agreements with Facebook would not only confirm Plaintiffs' theory of liability, but could also help Plaintiffs develop their theory of damages. Because Plaintiffs' requests for documents were tailored to the types of information that the Publicis entities are

9

likely to be able to access easily, Plaintiffs' requests were reasonable within the meaning of Rule 26(b) and therefore discoverable.

### C. The Publicis Entities Have Waived Their Objections

Because the Publicis entities have not only failed to respond or object within the time specified by Rule 45(c)(2)(B), but also have **failed to respond** by any of the four subsequent deadlines to which Plaintiffs consented, the Publicis entities have waived their right to object to the document production requests. *Concord Boat Corp*, 169 F.R.D. at 48. Plaintiffs approached these requests for production in good faith and in a spirit of cooperation, and consistently demonstrated their willingness to compromise with the Publicis entities. But the Publicis entities are now making a mockery of the discovery process. The Publicis entities cannot simply ignore the subpoena. *See In re Corso*, 328 B.R. 375, 385 (E.D.N.Y. 2005). Plaintiffs therefore submit that, in addition to ordering the Publicis entities to respond to the subpoenas, the Court should deem the Publicis entities' objections waived. *In re Corso*, 328 B.R. at 385 (waiving subpoena recipient's objections where "there was a service of a subpoena with clear and unambiguous provisions" and the movant "offered to limit the scope of the subpoena" to a random sample of files and examination of a representative witness, but there was "no effort by [the recipient] to comply"). As one court in this District has explained, "The recipient of a subpoena may not ignore the subpoena and then later question its validity." *Carey v. Air Cargo Assocs., Inc.*, No. 18 MS 302/09-2353, 2011 WL 446654, at *3 (S.D.N.Y. Feb. 7, 2011).

## III. CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion to Compel and enter an order requiring (1) the Publicis entities to produce the documents requested in the subpoenas, or at the very least, the documents requested as narrowed in the October 16, 2018 letter, and (2) Publicis to produce Ms. Helen Lin for deposition. The Court should also issue an order

deeming the Publicis entities' objections waived.

Dated: November 2, 2018

                                  _/s/ Michael Eisenkraft__
Michael Eisenkraft
Cohen Milstein Sellers & Toll PLLC
88 Pine Street, 14th Floor
New York, NY 10005
(212) 838-7797
meisenkraft@cohenmilstein.com

Eric Gibbs (SBN 178658)
Dylan Hughes (SBN 209113)
David Stein (SBN 257465)
Aaron Blumenthal (SBN 310605)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ehg@classlawgroup.com
dsh@classlawgroup.com
ds@classlawgroup.com
ab@classlawgroup.com

Andrew N. Friedman (*pro hac vice*)
Geoffrey Graber (SBN 211547)
Eric Kafka (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
afriedman@cohenmilstein.com
ggraber@cohenmilstein.com
ekafka@cohenmilstein.com

Robert T. Eglet (*pro hac vice*)
Robert M. Adams (*pro hac vice*)
Erica D. Entsminger (*pro hac vice*)
Artemus W. Ham (*pro hac vice*)
**EGLET PRINCE**
400 South Seventh Street, Suite 400
Las Vegs, NV 89101
Telephone: (702) 450-5400
Facsimile: (702) 450-5451
eservice@egletlaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

        I certify that, on November 2, 2018, a copy of the foregoing was sent via email and overnight delivery to the following:

| | |
|---|---|
| Christopher Sun<br>David Silbert<br>Eduardo E. Santacana<br>Elizabeth McCloskey<br>Ian Kanig<br>Michelle Ybarra<br>Paven Malhotra<br>Keker, Van Nest & Peters LLP<br>633 Battery Street<br>San Francisco, CA 94111<br>415-391-5400<br>Email: csun@keker.com<br>       dsilbert@keker.com<br>       esantacana@keker.com<br>       emccloskey@keker.com<br>       ikaning@keker.com<br>       mybarra@keker.com<br>       pmalhotra@keker.com | Victoria A. Jepson<br>Steptoe & Johnson LLP<br>115 South LaSalle Street<br>Suite 3100<br>Chicago, IL 60603<br>312-577-1244<br>Email: vjepson@steptoe.com |
| *Counsel for Defendant* | *Counsel for Non-Parties Helen Lin, Publicis Media, Starcom MediaVest Group, Inc., Zenith Media Services, Inc., MediaVest Worldwide, Inc., and Digitas, Inc.* |

Dated:    November 2, 2018                            */s/ Michael Eisenkraft*
                                                                             Michael Eisenkraft