UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LLE ONE, *et al.*,

                Plaintiffs,

—*against*—

FACEBOOK, INC.,

                Defendant.

18 Misc. 503 (JMF)

## OPPOSITION OF NONPARTY RESPONDENTS TO THE PLAINTIFFS' MOTION TO ENFORCE SUBPOENAS

STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900

November 19, 2018

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

BACKGROUND .............................................................................................................................. 2

    The Underlying Litigation and the Non-Parties............................................................. 2

    The Materials Requested................................................................................................ 2

    The Parties' Discussions Regarding the Scope of the Subpoenas ......................... 3

    The Plaintiffs' Arbitrary Deadlines ...................................................................... 5

    The Parties' Call on October 15 ................................................................................ 6

    The Plaintiffs' Unilaterally Terminate Discussions and File this Motion .............. 6

    The Plaintiffs' Continued Bad Faith ......................................................................... 7

DISCUSSION ................................................................................................................................... 8

    I.    THE MOTION SHOULD BE DENIED BECAUSE THE PLAINTIFFS
          DID NOT MEET AND CONFER WITH THE NON-PARTIES,
          AS THE RULES REQUIRE .................................................................................. 8

    II.    THE MOTION SHOULD BE DENIED BECAUSE THE INFORMATION
          SOUGHT BY THE REQUESTS AT ISSUE IS NOT DISCOVERABLE. ........... 9

          A.    Requests Unconnected to the Error
                  Are Irrelevant and Unduly Burdensome .................................................... 10

          B.    Requests 2 and 4 Seek Information More Properly
                  Sought from Facebook, a Party to the Underlying Case ........................... 11

          C.    Requests 2 and 3 Are Moot, as the Error
                  Does Not Impact the Non-Parties' Billing ................................................. 12

          D.    No Deposition Is Appropriate, At Least at this Time ................................ 12

    III.    THE MOTION SHOULD BE DENIED BECAUSE
          THE PLAINTIFFS HAVE ONLY SERVED
          REDACTED VERSIONS OF THEIR MOTION PAPERS ................................ 12

CONCLUSION ............................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**                       **Page(s)**

*Abourezk v. Reagan*,
  785 F.2d 1043 (D.C. Cir. 1986) .................................................................................................13

*Cohen v. City of New York*,
  255 F.R.D. 110 (S.D.N.Y. 2008) ................................................................................................10

*Compass Bank v. Shamgochian*,
  287 F.R.D. 397 (S.D. Tex. 2012) ..................................................................................................9

*Concord Boat Corp. v. Brunswick Corp.*,
  169 F.R.D. 44 (S.D.N.Y. 1996) ..................................................................................................10

*Edmondson v. RCI Hospitality Holdings, Inc.*,
  2018 WL 4112816 (S.D.N.Y. Aug. 29, 2018) ............................................................................10

*Evergreen Media Holdings, LLC v. Stroock & Stroock & Lavan LLP*,
  2015 WL 12765630 (C.D. Cal. April 16, 2015) ...........................................................................9

*In re First Am. Corp.*,
  184 F.R.D. 234 (S.D.N.Y. 1998) ................................................................................................10

*Khan v. Shailendra*,
  2014 WL 12698914 (N.D. Ga. July 25, 2014) .............................................................................9

*King County, Wash. v. IKB Deutsche Industriebank AG*,
  2012 WL 3553775 (S.D.N.Y. Aug. 17, 2012) ............................................................................10

*Tri-Star Pictures, Inc. v. Unger*,
  171 F.R.D. 94 (S.D.N.Y. 1997) ....................................................................................................8

*United States v. Quest Diagnostics Inc.*,
  734 F.3d 154 (2d Cir. 2013) .......................................................................................................13

*Woods v. Google, Inc.*,
  2014 WL 1321007 (N.D. Cal. Mar. 28, 2014) .............................................................................8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 5 ..............................................................................................................................12

Fed. R. Civ. P. 26 ............................................................................................................................12

Fed. R. Civ. P. 37 .........................................................................................................................8, 9

Fed. R. Civ. P. 45 ......................................................................................................................10, 12

Local Civil Rule 26.4 ................................................................................................................8

Local Civil Rule 37.2 ................................................................................................................8

## INTRODUCTION

The Plaintiffs in an action in federal court in California had been engaged in an ongoing dialogue with the respondents to this proceeding, five affiliated marketing and media firms and an employee of one of them (the "Non-Parties"),[1] concerning a collection of subpoenas seeking a wide range of information for the underlying case.  The Non-Parties have been investigating in good faith what relevant material they may possess (not much, as it turns out), and discussing with the Plaintiffs why certain of their requests were unduly burdensome and irrelevant.  In the midst of this dialogue, the Plaintiffs abruptly and unilaterally declared the discussions over and filed this motion.  The motion should be denied on multiple, independent grounds.

*First*, the Plaintiffs did not comply with the familiar requirement to meet and confer before filing a discovery motion.  They unilaterally declared the parties' ongoing discussions terminated, and ran to court.  This is improper, and grounds alone to deny the motion entirely.

*Second*, the Non-Parties have already agreed to produce the material that is actually relevant to the underlying litigation — documents concerning an error in the way Facebook calculated a metric for tracking how long users watched videos — but the rest of what the Plaintiffs seek is irrelevant, grossly overbroad, or both.

*Finally*, the Plaintiffs have served the Non-Parties with only a redacted version of their motion papers, claiming that portions are governed by a protective order in the underlying action.  The Plaintiffs appear to rely on evidence, unknown to the Non-Parties, as to why they believe the Non-Parties would possess "unique" relevant evidence.  This is improper, and is an independent ground to deny the motion.

---

[1] The Non-Parties are Publicis Media, Inc.; Starcom MediaVest Group, Inc.; Zenith Media Services, Inc.; MediaVest Worldwide, Inc.; Digitas, Inc.; and Helen Lin.

BACKGROUND

**The Underlying Litigation and the Non-Parties**

Plaintiffs issued six subpoenas to the Non-Parties, who have little connection with the underlying dispute between Plaintiffs and Facebook, Inc. ("Facebook" or "Defendant") on August 28, 2018, requesting wide swaths of information spanning the course of several years. (Graber Decl. ¶ 5 & Ex. C.) The Non-Parties are large advertising and media companies, and an individual employee of one of the Non-Parties. (Jepson Decl. ¶ 2.) The Non-Parties help their advertiser-clients develop and implement marketing strategies to advance their brands. (*Id*.) Some of the Non-Parties' clients—none of whom are named plaintiffs in this action—use Facebook as an advertising platform. (*Id*.)

The underlying dispute relates to a measurement by which Facebook determined how long Facebook users viewed a video advertisement posted on the Facebook website (the "Miscalculated Metric" or the "Error"). (*See generally* Graber Decl. Ex. I (Complaint).) Plaintiffs allege that they overpaid for video advertisements because those advertisements were not viewed for as long a period as Facebook initially stated. (*Id*.)

**The Materials Requested**

The Plaintiffs' subpoenas seek the following six categories of documents:

> 1. All Documents Relating To Facebook's Average Duration Metrics, including the Error.
>
> 2. All Documents Relating To any compensation provided by Facebook to You Relating, in part or in whole, to the Error, including – but not limited to – reimbursement, discounts on future purchases, or bonus impressions or views.
>
> 3. All Documents Relating To any compensation provided to Your customers Relating, in part or in whole, to the Error, including— but not limited to— reimbursement, discounts on future purchases, or bonus impressions or views.

>    4. All Documents Relating To third-party verification of Facebook video advertising metrics.
>
>    5. All contracts between You and Facebook, including for video advertising services.
>
>    6. All documents relating to Facebook's video advertising metrics.

(Graber Decl. ¶ 9 & Ex. C at 4.)  The plaintiffs are also seeking a deposition of the individual respondent (Helen Lin), as well as a corporate representative deposition from each corporate entity.  (*Id.* ¶ 10.)

**The Parties' Discussions Regarding the Scope of the Subpoenas**

Upon receipt of the subpoenas, the Non-Parties began investigating whether they had responsive information concerning the measurement at issue in the underlying case and whether the Non-Parties had records reflecting Facebook billings based on these measurements.  (Jepson Decl. ¶ 4.)  Counsel for the Non-Parties and Plaintiffs engaged in discussions regarding the scope and timing of the six subpoenas and, from the earliest conversations, the Non-Parties expressed their willingness to comply with the subpoenas.  (*Id.*).

Plaintiffs' assertions that the Non-Parties have refused to comply are not true—*Non-Parties did not represent, at any point in time, that they refused comply with the subpoenas.*  (*Id.* ¶ 5.)  Because the subpoenas were quite broad, however, the Non-Parties did ask Plaintiffs to narrow the subpoenas to a more focused set of materials to reduce the burden on the Non-Parties because, as written, the subpoenas would require the Non-Parties to search virtually all of their transactions with Facebook over a virtually unlimited period of time; many of these transactions take place through Facebook's own portal which would contain a complete record for those transactions in contrast with the Non-Parties' partial information in emails and financial transaction documents.  (*Id.* ¶ 7.)  Plaintiffs represented that they were willing to negotiate the scope of subpoenas, but did not suggest a narrower scope until counsel for Non-Parties and

Plaintiffs arranged a call on October 15, 2018, during which Plaintiffs' agreed to defer two requests and depositions, as well as to narrow the timeframe to January 1, 2016 through June 30, 2017.  (*Id.* ¶ 10.)

Throughout their discussions, the Non-Parties stated that, rather than waste the parties' time with blanket objections or gamesmanship, Non-Parties would investigate Plaintiffs' requests and provide substantive responses if the Non-Parties had responsive documents.  (*Id.* ¶ 8.)  Plaintiffs said they concurred in this approach.  (*Id.* ¶ 7.)

Non-Parties also explained that providing substantive responses would require time for each of the entities—which are large companies—to search their records, determine whether they possessed responsive information, analyze whether potentially responsive information was privileged or confidential, prepare logs relating to privileged and confidential information, draft responses, and produce responsive documents.  (*Id.*)

While the discussions were wide-ranging, a few recurring themes emerged:

First, the Plaintiffs appeared most interested in learning about how the Error affected what the Non-Parties' clients paid for advertising on Facebook (Request 3), or how it affected what Facebook would pay to the Non-Parties (Request 4).  (*Id.* ¶ 4.)  After some investigation, the Non-Parties determined that, in fact, the Error did not affect these compensation arrangements at all because Facebook's billings through the Non-Parties to their advertiser clients were not based on these metrics.  (Lin Decl. ¶ 5.)  Second, as Plaintiffs know, the Non-Parties had complained to Facebook about the Error, and at all times have committed to producing discovery relating to those discussions.  (*See,* Jepson Decl. Ex. D)  While the Error may not have had a direct effect on billings, it was nonetheless troubling for the Non-Parties and their clients to learn that the metrics at issue were not what they appeared to be; the Non-Parties

advised their advertiser clients when the Error became public and encouraged clients to lend their voices to the Non-Parties' request for more transparency.

Third, the Non-Parties were at all times unwilling to produce material that would be in the possession of Facebook, which is a party to the action.  (*Id*. ¶ 4.)  This includes the materials sought by Requests 2 ("compensation provided by Facebook to you") and 5 ("contracts between You and Facebook").  (*Id*.)  Plaintiffs candidly admitted that they sought this information from the Non-Parties because they were frustrated that Facebook had not produced it.  (*Id*.)

Fourth, the Non-Parties were at all times unwilling to produce material relating more broadly to their relationship with Facebook, unconnected to the Error.  (*Id*. ¶ 7.)  Given that Facebook is such a huge advertising platform, the volume of material that would fall within, for example, the Plaintiffs' request for "All documents relating to Facebook's video advertising metrics" (Request 6) or their request for "All Documents Relating To third-party verification of Facebook video advertising metrics" (Request 4), would be staggering, with seemingly little if any relevance to the case.  (*See,* Lin Decl. ¶ 8-9.)  The Plaintiffs appeared to have some flexibility on this point, and agreed to set aside Requests 4 and 6.  (Graber Decl. Ex. E at 4.)

Finally, the Non-Parties also discussed the burden that depositions would inflict on five entities with no connection to the dispute between Plaintiffs and Facebook, and stated their belief that the information Plaintiffs sought could be readily found in documents that Non-Parties were willing to produce.  (Jepson Decl. ¶ 11-12.)  Plaintiffs agreed to defer depositions.  (*Id*. ¶ 10.)

**The Plaintiffs' Arbitrary Deadlines**

Despite agreeing to provide Non-Parties time to respond to the subpoenas in a reasonable manner in their conversations with Non-Party counsel, Plaintiffs, on multiple occasions, arbitrarily and unilaterally demanded impossible "deadlines" for the six Non-Parties' responses, to which none of the Non-Parties agreed.  (Jepson Decl. ¶ 8.)

As an example, on September 27, 2018, Plaintiffs' counsel stated that Plaintiffs were "willing to grant an extension" to September 26, 2018, just *one day,* which the Plaintiffs knew Non-Parties had not agreed to and could not meet. (*Id.*; *see also* Graber Decl. Ex. at 2.).

**The Parties' Call on October 15**

Counsel for the parties spoke by phone on October 15, and discussed several of the matters referred to above, including the Non-Parties' conclusion that the Error did not impact any billing arrangements — and hence there would be no responsive documents for the requests seeking information about compensation tied to the Error. (Jepson Decl. ¶ 10-11.) *Plaintiffs did not mention filing a motion to enforce at any time during this conversation*. (*Id.* ¶ 13.) Any representations to the contrary are blatantly false.

As far as the Non-Parties were concerned, they were planning to supply a formal response to the subpoenas once the scope had been agreed, and then begin producing documents on a rolling basis within two weeks. (*Id.* ¶ 16.)

**The Plaintiffs' Unilaterally Terminate Discussions and File this Motion**

On November 1, 2018, the counsel for Plaintiffs emailed counsel for the Non-Parties with a highly inaccurate summary of the discussions, punctuated by a unilateral declaration that the talks were over: "At this point, Plaintiffs have no choice but to seek relief in court." (Jepson Decl. ¶ 14 & Ex. A.) Counsel for the Non-Parties urged calm, and reminded the Plaintiffs that the Non-Parties were "actively working on a substantive response." (*Id.*)

Undeterred, and with no further discussion, the Plaintiffs went ahead and filed their motion. They then served a version of the motion with substantial redactions, apparently because the motion papers refer to material governed by a protective order in the underlying litigation. (*See* Jepson Decl. ¶ 15.)

On November 9, 2018, the Non-Parties served formal objections as provided in Rule 45, spelling out (based on their investigation and the parties' discussion) exactly what would be produced, on a rolling basis, and why specific requests were objectionable. (Jepson Decl. ¶16 & Ex. B.) Importantly, the Non-Parties agreed to produce "produce non-privileged, non-confidential information in their possession regarding the Error on a rolling basis." (*Id*.) This will encompass, for example, complaints from clients concerning the Error, and communications with Facebook. (Jepson Decl. ¶ 4.) The Non-Parties are collecting those materials at present, and expect to make an initial production within two weeks. (*Id*. ¶ 16)

**The Plaintiffs' Continued Bad Faith**

The only meet-and-confer that occurred at was *at Non-Parties' request, after the Motion was filed*. On November 15, 2016, Non-Parties learned of the Court's Scheduling Order entered that day, requiring Non-Parties and Defendant to submit written oppositions to Plaintiffs' Motion by November 19, 2018. (Jepson Decl. ¶ 17-18.) Because they had not appeared in the action and Plaintiffs had not advised them of it, the Non-Parties did not receive notice of the Court's prior scheduling order. (*Id.* ¶ 17.) Upon learning of the Court's November 15 Order, the Non-Parties requested a meet-and-confer the very same day. (*Id.*) After Non-Parties requested a conference, Plaintiffs, Defendant, and Non-Parties participated in a call regarding Plaintiffs' Motion on November 16, 2018. (*Id.*¶ 18.)

The Non-Parties stated their belief that Plaintiffs' Motion was filed in bad-faith and was procedurally and substantively improper, and reiterated their interest in resolving the matter without burdening the Court with the discovery dispute. (*Id.* ¶ 19.) Plaintiffs refused to withdraw their subpoenas and, inexplicably, have demanded Non-Parties waive their objections to the subpoenas and produce all information requested — even reneging on points that the

Plaintiffs themselves had agreed to before—and have indicated that they will not reimburse the Non-Parties for any of the costs of production. (*Id.*)

## DISCUSSION

### I. THE MOTION SHOULD BE DENIED BECAUSE THE PLAINTIFFS DID NOT MEET AND CONFER WITH THE NON-PARTIES, AS THE RULES REQUIRE

First and foremost, Plaintiffs' motion should be denied because they failed to meet and confer in good faith prior to filing their motion. Rule 37 requires that a party must "provide notice to other parties and all affected persons" before moving for an order compelling disclosure or discovery. Fed. R. Civ. P. 37(a). The movant is also required to "include a certification that the movant has *in good faith* conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." *Id.* Local Civil Rules 26.4 and 37.2 echo these requirements and mandate that "[p]rior to seeking judicial resolution of a discovery…the attorneys for the affected parties or non-party witnesses shall attempt to confer in good faith or by telephone in an effort to resolve the dispute, in conformity with Fed. R. Civ. P. 37(a)(1)," as does this Court's Practice Rule 2(C).

These obligations require more than perfunctorily going through the motions. Instead, the parties must "to meet, in person or by telephone, and [to] make a genuine effort to resolve the dispute by determining, without regard to technical interpretation of the language of a request, what the requesting party is actually seeking; what the discovering party is reasonably capable of producing that is responsive to the request; and what specific genuine issues, if any, cannot be resolved without judicial intervention." *Tri-Star Pictures, Inc. v. Unger*, 171 F.R.D. 94, 99 (S.D.N.Y. 1997).

Rule 37's meet-and-confer requirement cannot be met with one side's "unilaterally declared impasse," followed immediately by a motion. *Woods v. Google, Inc.*, C11–01263 2014

WL 1321007, at *2 (N.D. Cal. Mar. 28, 2014); *see also, e.g.*, *Evergreen Media Holdings, LLC v. Stroock & Stroock & Lavan LLP*, 15-016482015 WL 12765630, at *3 n.4 (C.D. Cal. April 16, 2015) (meet-and-confer obligations cannot be met with "a unilateral email or a letter war"). Nor can it be met with the moving party "setting an arbitrary response deadline" and then complaining it was not met. *Compass Bank v. Shamgochian*, 287 F.R.D. 397, 400 (S.D. Tex. 2012); *see also Khan v. Shailendra*, 13-CV-03849, 2014 WL 12698914, at *1 (N.D. Ga. July 25, 2014) ("[S]ending a letter demanding compliance with [ ] discovery requests by an arbitrary deadline does not satisfy the meet-and-confer requirement."). Yet that is exactly what the Plaintiffs have done here.

Tellingly absent from the Plaintiffs' moving papers is any sworn statement that the Plaintiffs conferred with Non-Parties counsel in good faith prior to filing this motion. In fact, they did not. Instead, the only time Plaintiffs even referenced seeking judicial relief was immediately before filing their motion. (Jepson Dec. ¶ 14 & Ex. A.)

Indeed, it was not until *after* Plaintiffs filed their motion and the Non-Parties received the Court's Scheduling Order that Plaintiffs' agreed *to Non-Parties' request to meet and confer.* (*Id.*) Prior to this time Plaintiffs made no effort to resolve this dispute without judicial intervention or to confer with the Non-Parties about compelling responses. Plaintiffs' failure to confer with Non-Parties, or to "include a certification that the movant has in good faith conferred…with the person or party failing to make disclosure," Fed. R. Civ. P. 37, is grounds enough for their motion to be denied.

## II. THE MOTION SHOULD BE DENIED BECAUSE THE INFORMATION SOUGHT BY THE REQUESTS AT ISSUE IS NOT DISCOVERABLE

Even if Plaintiffs had adhered to federal and local procedural rules, their motion should nevertheless be denied because their discovery requests are improper.

Recognizing that nonparties are typically "innocent, disinterested bystander[s]," to the underlying litigation, *In re First Am. Corp.*, 184 F.R.D. 234, 242 (S.D.N.Y. 1998), Rule 45 states that a "party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). With this caution in mind, courts are "particularly sensitive" regarding, and give "special weight" to, "the burden on non-parties of producing documents to parties involved in litigation." *Cohen v. City of New York*, 255 F.R.D. 110, 117 (S.D.N.Y. 2008).

The Plaintiffs here have not heeded these cautions, and have issued overly broad, irrelevant, and otherwise improper requests, which (except to the extent of documents relating to the Error, which the Non-Parties have agreed to produce) should be denied.[2]

### A. Requests Unconnected to the Error Are Irrelevant and Unduly Burdensome

It is well-settled that the "burden of establishing relevance rests with the party seeking to compel discovery." *King County, Wash. v. IKB Deutsche Industriebank AG*, 09 Civ. 8387, 2012 WL 3553775, at *1 (S.D.N.Y. Aug. 17, 2012); *see also Edmondson v. RCI Hospitality Holdings, Inc.*, 16-CV-2242, 2018 WL 4112816, at *2 (S.D.N.Y. Aug. 29, 2018) (concluding that the it is the moving party's burden to "make a showing of relevance *before* th[e] Court will compel disclosure") (emphasis in original).

---

[2] The Non-Parties did not issue written objections until November 9 because, until that time, the parties were still in discussions concerning the scope of the subpoenas, and because the Non-Parties themselves were trying to ascertain what responsive documents could be located. The Court has discretion to consider these objections, regardless of any alleged waiver arguments from the Plaintiffs. All the relevant factors for considering objections, in spite of an argument about waiver, are present in this case: (1) "the subpoena is overbroad on its face"; (2) "the subpoenaed witness is a non-party acting in good faith," and (3) "counsel for witness and counsel for subpoenaing party were in contact concerning the witness' compliance" during the relevant time. *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996).

Here, five of Plaintiffs' requests (Requests 1, 2 and 4-6) are not tethered to the Error that is at the heart of the underlying litigation, and the Plaintiffs have not even attempted to meet their burden to show how the material could be relevant.

For example, Request 6 seeks "All documents relating to Facebook's video advertising metrics," presumably including *any* metric, whether connected to the Error or not. As set out above, the number of advertiser clients for whom the Non-Parties placed advertising on Facebook is well over 500 across the agencies; each placement by each agency for each client campaign is done by separate Insertion Order or through entries in the Facebook portal by which advertisements are keyed directly into the Facebook system. (Lin Decl. ¶ 7.) Each agency would have to review the correspondence related to each advertisement, as well as the financial transactions related to each placement, and would require access to third-party records that may no longer be available given the volatility of the digital media advertising ecosystem. (*Id.* ¶ 8.)

This is wildly overbroad, and, given the significance of Facebook to the Non-Parties' business, would impose staggering burdens on them. (*Id.* ¶ 9.) The improper nature of these fishing requests is apparent when considering that the Error had nothing to do with the Non-Parties' billings with Facebook. Contrast these requests with the information that the Non-Parties have agreed to produce: information related to the Error, correspondence with clients about the Error, and correspondence with Facebook about the Error. That should suffice.

B. **Requests 2 and 4 Seek Information More Properly Sought from Facebook, a Party to the Underlying Case**

Here, Plaintiffs seek—from Non-Parties rather than defendants in the underlying action—"All Documents Relating To any compensation provided by Facebook to You…" and "All Contracts between You and Facebook…" (Graber Decl. Ex. C at 3.) This information can, and should, be sought from Defendants, not from Non-Parties. Plaintiffs have admitted that they

are seeking documents from Non-Parties because Plaintiffs have not yet received this information from Facebook.  (Jepson Decl. ¶ 12.)  Rule 26 instructs courts to limit discovery that could be sought from a "more convenient, less burdensome, [and] less expensive" source.  Fed. R. Civ. P. 26(b)(2)(C)(i), and Rule 45 instructs parties and their counsel to "avoid imposing undue burden or expense" on nonparty subpoena targets.  Fed. R. Civ. P. 45(d).  These requests run afoul of these rules, and should be rejected.

### C. Requests 2 and 3 Are Moot, as the Error Does Not Impact the Non-Parties' Billing

The Non-Parties' billing practices were not affected by the Error, and hence there cannot be documents that relate to the Error and "compensation" (Requests 2 and 3).  (*See*, Lin Decl. ¶ 12.)  For purposes of these two Requests, the motion should be rejected on the independent ground that there is nothing for the Court to compel.

### D. No Deposition Is Appropriate, At Least at this Time

The Plaintiffs have not met their burden to show why a deposition would be necessary, or why the Non-Parties should be burdened even further.  This is particularly so, given that the apparent primary aim of these subpoenas — to show how clients overpaid based on the Error — has proven to be a bust.

Notably, the Plaintiffs earlier agreed to at least defer any depositions, until they have had a chance to review the documents.  (Graber Decl. Ex. E at 2.)  At a minimum, the Court should hold the Plaintiffs to that position and not compel a deposition, at least for now.

### III. THE MOTION SHOULD BE DENIED BECAUSE THE PLAINTIFFS HAVE ONLY SERVED REDACTED VERSIONS OF THEIR MOTION PAPERS

Rule 5 requires that every "written motion" must "be served on every party."  Fed. R. Civ. P. 5(a)(1).  There is no exception allowing for the something less than the full motion papers — such as redacted versions — to be served on opposing counsel. While Judge Sweet, sitting in

Part I, authorized the Plaintiffs to "file" their papers with redactions (*see* ECF No. 2-14), there has been no authorization to *serve* redacted copies on the nonparties.

As a result, Plaintiffs are effectively asking this Court to decide their motion, based in part on *ex parte* evidence, without having obtained Court approval to do so. This is highly unfair and inappropriate. Courts recognize that "reliance upon *ex parte* evidence to decide the merits of a dispute" is appropriate "only in the most extraordinary circumstances," *United States v. Quest Diagnostics Inc.*, 734 F.3d 154, 160 n.2 (2d Cir. 2013) (citation omitted), such as where there are "acute national security concerns." *Abourezk v. Reagan*, 785 F.2d 1043, 1061 (D.C. Cir. 1986).

This is not merely a technical point, as the Plaintiffs apparently are relying on redacted materials to support some of their most central arguments, such as the argument that the Non-Parties are "likely possess unique documents" that are relevant to the case, and "documents relevant to Plaintiffs' claims for injunctive relief." (ECF No. 2-1, at 4, 9.)

We do not see how these arguments could be meritorious, but cannot possibly respond to evidence that we cannot see. If this hidden evidence were in fact so central to the Plaintiffs' application, they should have first sought relief from the Protective Order in the underlying litigation, so that the Non-Parties could see it. On this independent basis, the motion should be denied.

## CONCLUSION

For the foregoing reasons, the Non-Parties respectfully request this Court deny the Plaintiffs' motion in full, and award any other relief that is just and proper.

Dated: New York, New York
       November 19, 2018

Of Counsel
Michael Dockterman
Victoria Jepson
STEPTOE & JOHNSON LLP
115 South LaSalle Street
Suite 3100
Chicago, Illinois 60603
(312) 577-1300
mdockterman@steptoe.com
vjepson@steptoe.com

Respectfully submitted,

By:   /s/ Charles Michael
     Charles Michael
     STEPTOE & JOHNSON LLP
     1114 Avenue of the Americas
     New York, New York 10036
     (212) 506-3900
     cmichael@steptoe.com

*Counsel for nonparty respondents Publicis Media, Inc.; Starcom MediaVest Group, Inc.; Zenith Media Services, Inc.; MediaVest Worldwide, Inc.; Digitas, Inc.; and Helen Lin*